UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| XIAOHAI YAN, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>RUHNN HOLDING LIMITED, MIN FENG, LEI SUN, CHAO SHEN, ZHENBO CHI, KE CHENG, SHEK YUEN TING, FENGCHUN JIN, SHANGZHEN LI, ZHENXING SHAO, PEN HUNG TUNG, JUNHONG QI, and XIAOCAO XU,<br><br>    Defendants. | Case No:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Xiaohai Yan ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of United States Securities and Exchange Commission ("SEC") filings by Ruhnn Holding Limited ("Ruhnn" or the "Company"), as well as media and analyst reports about the Company and Company press releases. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

**NATURE OF THE ACTION**

1. This is a securities class action on behalf of all persons or entities who purchased Ruhnn American Depositary Shares ("ADSs") pursuant and/or traceable to the Company's April

1

3, 2019 initial public offering (the "IPO" or "Offering"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

## JURISDICTION AND VENUE

2. The claims alleged herein arise under and pursuant to Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k and 77o.

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 22(a) of the Securities Act (15 U.S.C. § 77v(a)) because a significant portion of the Defendants' actions and the subsequent damages took place within this District. Pursuant to the deposit agreement referenced in the Registration Statement (defined below), any action in connection with the IPO arising under the Securities Act "may only be instituted in a state or federal court in New York, New York." Accordingly, the Eastern District of New York is an appropriate venue.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications, and the facilities of a national securities exchange. Defendants disseminated the statements alleged to be false and misleading herein into this District, and Defendants solicited purchasers of Ruhnn securities in this District.

## PARTIES

6. Plaintiff, as set forth in the accompanying Certification, incorporated by reference herein, purchased Ruhnn ADSs pursuant and/or traceable to the IPO and was damaged thereby.

7. Defendant Ruhnn describes itself as an e-commerce retailer and so-called "key opinion leader" facilitator based in Hangzhou, China. Ruhnn conducted the IPO in New York

and the ADSs sold in the IPO trade in New York on the Nasdaq Stock Market under the ticker symbol "RUHN." The Company maintains a dual voting class structure designed to concentrate control of the Company in the hands of Company insiders out of proportion to their economic stake in Ruhnn. Class B shares, which were exclusively held by Company insiders, each have ten votes per share, as compared to Class A shares, which entitle their holders to only one vote per share. Each Ruhnn ADS sold in the IPO represents five Class A ordinary shares of the Company. After the IPO, Class B shareholders were estimated to control 88.2% of the Company's voting control, and thus to dominate Ruhnn's activities and affairs.

8. Defendant Min Feng ("Feng") was the Chairman of the Board of Directors of Ruhnn (the "Board") at the time of the IPO. He is also a founder of the Company. Prior to the IPO, defendant Feng owned over 29% of the voting power of the Company. Through his ownership of Class A and Class B shares, defendant Feng maintained 50.1% voting control of the Company following the IPO. His ownership of Class B shares provided defendant Feng with disproportionate voting control over Ruhnn as compared to his economic stake in the Company.

9. Defendant Lei (a/k/a Ray) Sun ("Sun") was Ruhnn's Chief Executive Officer and a director at the time of the IPO. He is also a founder of the Company. Prior to the IPO, defendant Sun owned over 14% of the voting power of the Company. Through his ownership of Class A and Class B shares, defendant Sun maintained 26.4% voting control of the Company following the IPO. Defendant Sun's ownership of Class B shares provided him with disproportionate voting control over Ruhnn as compared to his economic stake in the Company. In addition, defendant Sun offered to sell an additional 875,000 shares of his own personal Ruhnn holdings in the IPO through his private investment vehicle, LEIYU Investment Limited, pursuant to the underwriters' overallotment option.

10. Defendant Chao (a/k/a Eric) Shen ("Shen") was a Ruhnn director at the time of the IPO. He is also a founder of the Company. Prior to the IPO, defendant Shen owned over 6% of the voting power of the Company. Through his ownership of Class A and Class B shares, defendant Shen maintained 12.1% voting control of the Company following the IPO. Defendant Shen's ownership of Class B shares provided him with disproportionate voting control over Ruhnn as compared to his economic stake in the Company. In addition, defendant Shen offered to sell an additional 175,000 shares of his own personal Ruhnn holdings in the IPO through his private investment vehicle, YangMing Investment Limited, pursuant to the underwriters' overallotment option.

11. Defendant Zhenbo (a/k/a Nick) Chi ("Chi") was Ruhnn's Chief Financial Officer at the time of the IPO.

12. Defendant Ke Cheng ("Cheng") was a director and the Chief Operating Officer of Ruhnn at the time of the IPO.

13. Defendant Shek Yuen Ting ("Ting") was the Assistant Secretary for Ruhnn at the time of the IPO.

14. Defendant Fengchun Jin ("Jin") was a Ruhnn director at the time of the IPO.

15. Defendant Shangzhen Li ("Li") was a director and Vice President of Ruhnn at the time of the IPO.

16. Defendant Zhenxing Shao ("Shao") was a Ruhnn director at the time of the IPO.

17. Defendant Pen Hung Tung ("Tung") was a Ruhnn director at the time of the IPO.

18. Defendant Junhong Qi ("Qi") was a Ruhnn director at the time of the IPO.

19. Defendant Xiaocao (a/k/a Cecilia) Xu ("Xu") was a Ruhnn director at the time of the IPO.

20. Defendants Feng, Sun, Shen, Chi, Cheng, Ting, Jin, Li, Shao, Tung, Qi, and Xu are referred to herein as the "Individual Defendants." The Individual Defendants each signed the Registration Statement, solicited the investing public to purchase securities issued pursuant thereto, hired and assisted the underwriters, planned and contributed to the IPO and Registration Statement, and attended road shows and other promotions to meet with and present favorable information to potential Ruhnn investors, all motivated by their own and the Company's financial interests.

## SUBSTANTIVE ALLEGATIONS

### Background

21. Defendant Ruhnn describes itself as China's largest key opinion leader ("KOL") facilitator and the largest KOL facilitator in China's e-commerce market. So-called KOLs are essentially social media influencers, *i.e.*, individuals who create content on social media platforms such as Facebook, YouTube, Tik Tok, and Instagram with the hope of garnering a large public following. As a purported KOL facilitator, Ruhnn contracts with social media influencers who are paid to promote, market, and advertise products and services to their fans and followers. Ruhnn claims to recruit, train, and manage KOLs and provide them with analytical support. The Company describes such activities as "incubating" KOLs. Ruhnn's KOLs primarily market women's apparel, cosmetics, shoes, handbags, and other fashion products on social media platforms popular in China, such as Miaopai, Tik Tok, and Kuaishou.

22. Ruhnn's KOLs provide marketing services both to Ruhnn-owned and -operated brands and stores and to Ruhnn's third-party customers. The Company describes sales of products through Ruhnn's own stores as the Company's product sales business, which Ruhnn also refers to as its "full-service model." The majority of these online stores are located or hosted on third-party ecommerce platforms and are operated and marketed in the name of

5

Ruhnn's KOLs. As of December 31, 2018, Ruhnn purportedly owned and operated ninety-one online stores. Ruhnn earns revenue from these product sales by taking a percentage of the sales price at the time the product is sold. The Company's full-service model is its largest and most important operating segment, accounting for over 88% of Ruhnn's total net revenues for the nine months ended December 31, 2018.[1]

23. Ruhnn also derives revenue from its service business, which Ruhnn refers to as its "platform model." Ruhnn launched its platform model in 2017 to market its KOLs and KOL services to third parties, such as brands, retailers, designers, and manufacturers. As of December 31, 2018, Ruhnn claimed to have over 500 customers using its platform services. Ruhnn earns fees for these services under a variety of arrangements.

24. On March 6, 2019, Ruhnn filed with the SEC a registration statement on Form F-1 for the IPO, which, after several amendments, was declared effective on April 2, 2019 (the Form F-1, together with all amendments, is referred to herein as the "Registration Statement"). One day later, on April 3, 2019, the Company filed a prospectus for the IPO on Form 424B4 (the "Prospectus"), which incorporated and formed part of the Registration Statement. The Registration Statement was used to sell to the investing public approximately 10 million Ruhnn ADSs, representing 50 million Ruhnn Class A ordinary shares, at $12.50 per share. Defendants generated $125 million in gross offering proceeds from their sale of Ruhnn ADSs in the IPO.

**Materially False and Misleading Statements Issued in the Registration Statement**

25. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make adequate disclosures required under the rules and regulations governing the preparation of such documents. For example, the

---

[1] Ruhnn's fiscal year ends on March 31st of the calendar year.

Registration Statement highlighted the dramatic growth in Ruhnn's net revenues derived from its full-service model, but failed to disclose that it had already shuttered almost 40% of its online stores in the fourth quarter of 2019, which ended March 31, 2019, and preceded the IPO. The Registration Statement provided the following table, which claimed that Ruhnn was operating ninety-one online stores in its full-service model, serviced by twenty-five KOLs as of December 31, 2018:

|  | As of and for the fiscal year ended March 31, | | As of and for the nine months ended December 31, | |
| --- | --- | --- | --- | --- |
|  | 2017 | 2018 | 2017 | 2018 |
| **Full-Service Model** | | | | |
| Number of our KOLs serving such business model[(1)] | 37 | 33 | 33 | 25 |
| Number of our online stores | 57 | 86 | 81 | 91 |
| Number of orders placed through our online stores | 5.1 million | 7.5 million | 6.2 million | 5.7 million |
| GMV of our online stores | RMB1,236.3 million | RMB1,944.4 million | RMB1,614.9 million | RMB1,776.6 million |

26. However, these statements were materially false and misleading, because the Registration Statement failed to disclose that by the time of the IPO, the number of Ruhnn's full-service online stores had plummeted to just fifty-six, a sequential decline of nearly 40%. Similarly, the number of KOLs servicing the Company's online stores had fallen 44% to just fourteen KOLs.

27. The Registration Statement also highlighted Ruhnn's full-service model as providing "the vast majority of [Ruhnn's] total revenue generated from fiscal years 2017 and 2018 and the first three quarters of fiscal year 2019, accounting for 99.1%, 96.3% and 88.3% of [its] total revenues, respectively." It also emphasized the Company's growth in revenues derived from the Company's full-service model, stating, in relevant part:

> We have established multiple monetization channels to capture the commercial opportunities created by the emergence of KOLs in China and *we have proven their monetization potential with the rapid expansion of our business*. We started with a full-service model whereby we operate online stores and integrate all major steps of the e-commerce value chain, from product design and sourcing, online store operation to logistics and after sales services. We generated product sales revenue of RMB572.4 million through the full-service model in fiscal year 2017, which increased by 59.4% to RMB912.5 million (US$132.7 million) in

fiscal year 2018, and increased by 3.8% from RMB728.1 million for the first three quarters of fiscal year 2018 to RMB755.9 million (US$109.9 million) for the first three quarters of fiscal year 2019.

\* \* \*

*Revenues from our full-service model increased by 59.4% from RMB572.4 million for fiscal year 2017 to RMB912.5 million (US$132.7 million) for fiscal year 2018, and increased by 3.8% from RMB728.1 million for the first three quarters of fiscal year 2018 to RMB755.9 million (US$109.9 million) for the first three quarters of fiscal year 2019. While we expect to continue increasing revenue from our full-service model*, sales volume as a percentage of our total revenues will likely decrease in the future as we strive to achieve dynamic balance between our business models according to industry trends and our working capital levels.

28. These statements were materially false and misleading because the Registration Statement failed to disclose that, by the time of the IPO, the Company's net revenues from its full-service model had already declined 46% on a sequential basis to RMB186.9 million in the fourth quarter of 2019, which also represented an anemic 1.4% quarterly growth rate on a year-over-year basis. In addition, the Company's full-service operating segment was not rapidly expanding, but, in fact, was rapidly contracting as of the date of the IPO.

29. The Registration Statement also claimed that Ruhnn's business strategies involved the continued "rapid" expansion of the Company's KOL ecosystem, stating, in relevant part:

*We plan to continue rapidly expanding our KOL ecosystem and create greater network effect for all participants*. In addition to recruiting more KOLs and enlarging their fan base, we plan to leverage our strong online store operation and value chain management capabilities to attract more brands, merchants, manufacturers and suppliers to join our KOL ecosystem. *We also expect to expand our KOL online stores into additional e-commerce platforms to take advantage of new and emerging popular e-commerce platforms in China, increase the exposure of our KOLs and online stores, and provide more choices and better experience to our customers*. Utilizing the flexibility of our platform model, we intend to explore opportunities to cooperate with more types of merchants and businesses so that they can benefit from, and provide more products and services to, our KOL ecosystem.

30. These statements were materially false and misleading because, at the time of the IPO, Ruhnn had slashed its online stores by nearly 40% and its full-service KOLs by 44%, and its net revenues derived from its full-service segment—the Company's largest and most important operating segment—had declined by 46% on a sequential basis.

31. The Registration Statement also purported to warn of risks that had passed, and were already coming to pass, or omitted to disclose known risks and adverse developments. For example, the Registration Statement stated that "[w]e *may* experience a decrease in purchases on our online stores," when in fact the Company had already closed dozens of stores, had lost 44% of its full-service KOLs, and was in the midst of a rapid contraction of its full-service operating segment that predated the IPO. This purported "risk" warning in the Registration Statement was thus itself materially misleading and was plainly not tailored to Ruhnn's actual known risks related to decreased purchases on its online stores.

32. Moreover, Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(a)(3)(ii), requires defendants to "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Similarly, Item 105 of SEC Regulation S-K, 17 C.F.R. § 229.105, requires, in the "Risk Factors" section of registration statements and prospectuses, "a discussion of the most significant factors that make an investment in the registrant or offering speculative or risky" and requires each risk factor to "adequately describe[] the risk." The failure of the Registration Statement to disclose the adverse trends in its full-service operating segment described above violated 17 C.F.R. § 229.303(a)(3)(ii) because these undisclosed facts that were known to defendants would (and did) have an unfavorable impact on the Company's sales, revenues, and income from continuing operations. This failure also

violated 17 C.F.R. § 229.105 because these adverse trends created significant risks that were not adequately disclosed, or disclosed at all, even though they were some of the most significant factors that made an investment in Ruhnn ADSs speculative or risky.

## The Truth Begins to Emerge

33. On June 14, 2019, Ruhnn reported its fiscal year and fourth quarter 2019 financial results. These results were for the quarter prior to the quarter in which defendants had conducted the IPO. In the fiscal 2019 press release, Ruhnn reported that, as of March 31, 2019, the Company only had fifty-six stores in operation, which indicated that the Company had closed nearly 40% of the ninety-one stores defendants reported operating in the Registration Statement. The press release also disclosed that Ruhnn's product sales had fallen 46% sequentially and grown by a meager 1.4% year over year. At the same time, Ruhnn's reported results in its service platform business were entirely eclipsed by the meager growth in the full-service product sales business. Revenue from platform services was $7.5 million and $22 million for the quarter and fiscal year, respectively, versus $28 million and $140 million in product sales for the quarter and year. Gross margin across the Company's revenue streams had also declined eighty basis points year over year, reflecting the Company's failure to approach profitability, as its most important operating segment, its full-service segment, had suffered a significant contraction prior to the IPO.

34. Since the IPO, and as a result of the disclosure of material adverse facts omitted from Ruhnn's Registration Statement, Ruhnn ADSs have fallen substantially below their IPO price, damaging Plaintiff and Class members.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action as a class action on behalf of all those who purchased Ruhnn ADSs pursuant and/or traceable to the Registration Statement (the "Class"). Excluded

from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Ruhnn or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

39. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether Defendants violated the Securities Act;

    b. whether the Registration Statement contained false or misleading statements of material fact and omitted material information required to be stated therein; and

11

c. to what extent the members of the Class have sustained damages and the proper measure of damages.

40. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### Violations of Section 11 of the Securities Act Against All Defendants

41. Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

42. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against all Defendants.

43. The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

44. Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions.

45. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

46. By reason of the conduct herein alleged, each Defendant violated or controlled a person who violated Section 11 of the Securities Act.

47. Plaintiff acquired Ruhnn ADSs pursuant to the Registration Statement.

48. At the time of their purchases of Ruhnn ADSs, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.

49. This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering, and is therefore timely.

## COUNT II

### Violations of Section 15 of the Securities Act Against the Individual Defendants

50. Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

51. This Count is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, against the Individual Defendants.

52. The Individual Defendants were controlling persons of Ruhnn by virtue of their positions as directors or senior officers of Ruhnn. The Individual Defendants each had a series of direct and indirect business and personal relationships with other directors and officers and major shareholders of Ruhnn. The Company controlled the Individual Defendants and all of Ruhnn's employees.

53. Ruhnn and the Individual Defendants were culpable participants in the violations of Section 11 of the Securities Act as alleged above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

54. This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering, and is therefore timely.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of Plaintiff and the Class, prays for judgment and relief as follows:

A. Declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

B. Awarding damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

C. Awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: October 31, 2019

                                            Respectfully submitted,

                                            POMERANTZ LLP

                                            */s/ Jeremy A. Lieberman*
                                            Jeremy A. Lieberman
                                            J. Alexander Hood II
                                            600 Third Avenue, 20th Floor
                                            New York, New York 10016

Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1. I, __Xiaohaiyan__ make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against **Ruhnn Holding Limited (NASDAQ:RUHN,** , hereafter referred as the "Company") and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire the "Company" securities at the direction of plaintiff's counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired the "Company" securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in the "Company" securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

1

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed  2019-10-24

(Date)

_Xiaohai yan_

(Signature)

_Xiaohai yan_

(Type or Print Name)

2

**Ruhnn Holding Limited (RUHN)** **Yan, Xiaohai**

## List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| 4/3/2019 | Purchase | 141 | $12.5000 |